The next case is In Re Stephen Yu, 2018-2000. Mr. Yu, you are ready. May it please the Court, my name is Stephen Yu, I'm the Pro Se Appellant. In this case, I'd like to reserve five minutes for rebuttal time. This is a case where the Patent Office is using overbroad claim construction, claim interpretation to artificially inflate the claim term so that their weak prior art can fit inside of it. The claim term in dispute is control system for autonomous driving of the vehicle on a roadway. But to focus on the main issue, the key word in dispute is driving on a roadway, as in autonomous driving on a roadway. The words driving on a roadway carries its ordinary plain meaning. But the Patent Office says that driving on a roadway is met by a lawnmower that operates autonomously. And they did this by... Because I looked at the prior art reference. Yeah, you're right. The primary embodiment is an autonomous lawnmower. But it's entitled unmanned utility vehicle. And then it goes on and describes a lot of different types of unmanned utility vehicles it's contemplating. Among them is a lawnmower, but then also a line painter, and also a sweeper. And so when I see those statements also being relied on by the agency, why isn't that reference reasonably read as teaching automated line painters, autonomous driving, sweepers? Well, overall, it's a lawn machine or a groundskeeping machine. The angle machine is a lawn... So it's not clear... Just take it, just stay with me. So what if the board and the agency said, unmanned utility vehicle prior art reference contemplates more than a groundskeeping vehicle? It also contemplates things like an autonomous driving sweeper, an autonomous driving line painter. Right. That'd be pure speculation. It could be autonomously a line painter for a sports field. Well, the reference talks about a line painter and a sweeper, does it not? It says those words. It does, but it's not... I'm not injecting those words into the reference. It does, but it's not perfectly clear in its disclosure that it is a road line sweeper or a road sweeper. It could be also more plausibly a sports field sweeper for clearing debris after a baseball game or football line drawer, football line painter for the groundskeeping. That's the more plausible explanation. But overall, it never says which one it is. It just says line painter and a sweeper, and it's not 100% inherent that it has to be a road sweeper or a road line painter. Now, the reference AMGOT constantly talks about guiding the vehicle over a plot. Over a plot. Reverses plot. Reverses a plot. Plot many times. So it's a piece of land, and you're claiming on a roadway. So you would have to persuade us that moving from a plot of land to a roadway is a patentable distinction, that it's not obvious that one control system going over a plot of land wouldn't be expected to go over a roadway, and that's pretty difficult. Why isn't a roadway obvious over a plot of land? Well, it's not an obviousness issue. They said that roadway is, that is equivalent to driving. The Patent Office mistakenly equivalents traversing over a plot of land as the same as being the complex action of driving. Driving is a complex visual motor path that requires the full attention of the driver. Now we're getting to, I think, what could be the crux of the case. You know, when I look at the dictionary definition of driving, it's the control or operation of a vehicle. Okay? Control or operation of a vehicle on a road path, on a roadway. As I understand it, you seem to be, the premise of your argument is that autonomous driving on a roadway is not just merely the control or operation of an unmanned vehicle on a road, but it's some kind of vehicle that is being controlled that can navigate through traffic and obey traffic signs, traffic lights, traffic rules, and keep up with the speed of traffic, whether it's 30 miles an hour, 50 miles an hour, etc. And I don't see any of that language in the claim. And so I guess what I'm wondering is why didn't you just amend your claims? This is, you know, an ex parte case. If you really wanted all of that thinking to be part of your claim invention, then you could have amended the claims to write that in, to make that clear. Otherwise, the control or operation of an unmanned vehicle on a roadway, I don't see why that wouldn't encompass an automated sweeper or automated line painter. With wheels, with a motor, with a control system, with a sensor system, I mean, ANGOT's got all of that. If I put everything that driving encompasses into the claim, it would be a very long claim. What I did instead was put a dozen examples of customary, ordinary examples of what driving means, sort of like making turns at intersections, keeping a safe distance, stopping for pedestrians. I put a dozen examples in there just so there's no doubt about what I mean by the term driving. Right, but you said it may include those things, which necessarily also suggests it may not include those things. It's a more open-ended expression of what you understand to be driving as disclosed in the specification. That's the concern I have. I don't think you would want us to say, oh, when you said may include 14 different things in your specification, you would want the claim then to be engorged with every single one of those 14 things as a requirement in the claim. I mean, that's not what we do with claim language in terms of incorporating everything in the specification. It would be the wrong thing to do, and it's all encompassed by the ordinary word driving. Which means control or operation of a vehicle. Control and numerous examples. Control or operation of a vehicle that obeys all traffic lights, traffic rules, traffic signs, line markings, and goes 50 miles an hour. The example I give is of the family dog accidentally releasing the parking brake. Mischievous family accidentally releasing the parking brake. The car rolls out the driveway, traverses across the street, hits the neighborhood car. The dog could not drive the car. The car moved, it traversed, but there was no complex visual motor task of driving the car. Do you think your claim limitation control system for autonomously driving a vehicle on a roadway is a means plus function limitation? I didn't see anything in your specification that describes exactly all the very complicated technology and algorithms for having a control system that's so sophisticated it can manage the navigation of a vehicle through lots of traffic, as you understand the claim to be. Well, I cited a 2006 MIT report which gives 47 pages of dense technical information about how an autonomous robot drives on a road. It's prior to this. It's well known. There's no need. I already have a long specification. There's no need for my specification to explain all the technical details. At the time, Google was already testing their self-driving cars. There's nothing abstract about such a control system. It exists. It's real life, and it works. And there's no need for me to explain in detail what that is. Would you like to save the rest of your time for rebuttal, or do you have further comments to make? I have no further comments. I would like to save the rest of the time for rebuttal. We will do that. Ms. Schoenfeld. May it please the court. I just wanted to make a few additional points. In addition to the points Judge Chen, you raised, the claim is to an apparatus claim. The structure is the control system. The control system is only nominally mentioned in the specification, and it's not shown at all in the figures. If you look at the description of the car, it doesn't even talk about or show the control system. So the structure that's needed for the control system is not given in the specification. And as appellant admits, this control system was known. It's not the novel aspect of it that was brought out in prosecution, that the control system is not the novel aspect of it. And appellant admits, of course, that ANGOT has a control system which can control the vehicle and communicate with the motor, which is all that is required from the claims. And I guess to answer his dog thing, it's not a method claim, and here the ANGOT control system is functioning to operate the actual vehicle. So it's not the same as a dog just by accident. I'm not even sure how the dog would do that, because obviously the dog would have to press something in order to operate the vehicle, but that example is not the same as using the ANGOT reference. I think there's a television commercial that depicts that. I have not seen that commercial. And again, you know, the board was properly relying... Do you think the roadway limitation is just not a limitation in this claim? Well, I think it is a limitation. I mean, it says driving on a roadway, but roadway is broad, and even in the specification it talks about a paved roadway, but paved roadway is not claimed here. So the claim is to a... Does ANGOT disclose a roadway? What? Does ANGOT disclose a roadway? ANGOT discloses a number of things which could be construed as a roadway. As we said in our brief, roadway, the ordinary term of roadway, is just basically a strip of land. ANGOT, yeah, besides a plot of land. Right, but ANGOT also talks about it being used in multiple configurations. It could be used in many different ways, a sweeper, you know... Okay, so wait, I thought I understood your answer to maybe yes. So if it was yes, can you tell me where in ANGOT is the language that I could construe as a disclosure of a roadway? So as I mentioned, roadway is a broad term. I just want to be clear. Is it true that the board did not find it would be obvious to do this on a roadway, but rather found ANGOT actually disclosed the roadway limitation? Is that right? The board said that ANGOT was capable of meeting the claim limitation driving on a roadway. I guess more precisely, the board found that the structure control system for driving on a roadway, ANGOT was capable of meeting that control system. So again, this is an unmanned vehicle, which is operated on a broad piece of land, which could be called a roadway. I guess you're saying this is not a method claim, where there's a step presided in the claim for driving the unmanned vehicle on a road. This is a structured claim to the vehicle itself that has a bunch of structural attributes. And then one structural attribute is this thing is a system that can drive this thing on a roadway. And the board concluded that what the reference discloses about an unmanned utility vehicle has all the attributes that it can also be driven on a roadway. Yes, that's correct. So would that be true? I'm just trying to understand this capable of argument. Sure. Suppose that all ANGOT disclosed was a vacuum cleaner. Like one of those vacuum cleaners that people have in their house that you don't have to be there for. It just zooms all over the house until it bumps into something and then changes direction. That would have a control system for automated movement. Now, nobody would suggest that a vacuum cleaner like that would be likely to travel on the road. Are you suggesting that under the board's capable of notion that anything with a control system capable of controlling itself such that theoretically you could put the vacuum cleaner out on the road and it would go straight? That that would meet this limitation? I think in your example, actually, the vacuum, I mean, that might be broad enough. You know, the driving on a roadway just means operating a vehicle. I mean, I think especially because the description was paved roadway and roadway is just a strip of land, I think arguably it could be broad enough. I mean, this is a very broad claim. I'm not sure I agree that roadway is just a strip of land. I have grass at home. I can't imagine anyone looking at the grass of my front lawn and saying, ah, a roadway. It doesn't make sense. Just like a vacuum cleaner operates on a carpet. I don't think anyone's going to say that carpet is also a roadway. So I don't think the strip of land thing necessarily for me gets me there. But so tell me, is it is the board of the view that if it has a control system which is capable of being operated on a roadway, even if it's a disclosure of vacuum cleaner, that nonetheless discloses this element? There certainly is case law that, you know, like the Schreiber lines of cases where it talks about if you just have the structure that's claimed, and here there is basically no structure. All there is is a control system. There's no further structure described. Everyone's in agreement that ANGOT has that control system that it would inherently be capable of performing the same functions as the claimed apparatus. So I think in this case, the board didn't necessarily need to go fully into that analysis because ANGOT is operating on what is broad enough to meet roadway. But I think you could go there. Certainly operating on something that's broad enough to meet roadway. What do you mean? What is the thing that's broad enough to meet roadway in ANGOT? The fact that there's a disclosure of, you know, that you could be on a path, like you're on a plot of land. It talks about, you know, the board specifically found, you know, on page five that it could be a vacuum cleaner, sweeper, scrubber. I know the examiner talked about, you know, roadways. Which of those discloses roadway? The, you know, the sander, the buffer, the line painter. The line painter, you're certainly on a specific piece of road that's designated. Really? What about line painting on fields, like football fields and everything else? I think you're still, like, that could still meet the broad language. The roadway definition? Yeah. So if roadway was a limitation, something that paints the lines on the football field is on a roadway? I think that, I mean, there's no. So let me tell you, have you ever seen Waterboy with Adam Sandler? I have not. Oh my gosh. This was such a win for you. People at PTO, how did you not moon her on Adam Sandler? Adam Sandler, he's got some deficits. And his mom, despite his age, will only allow him to drive his lawnmower to and from school. So he drives his lawnmower. Well, perfect. I'll add that to my list of movies. That's not in the record. You just don't notice. If there are no further questions, I'll yield the remainder of my time. Thank you, counsel. Mr. Yu has some rebuttal time if you wish to use it. In the conclusion of the brief, the Patent Office makes an unusual request to this Court. They ask the Court that if they should lose this case, they want the Court to remand with instructions that the Patent Office should continue the examination of this application with the more relevant self-driving car prior that I've been talking about all this time and basically issue a new rejection. They're essentially asking a court for a court-decreed do-over to mandate a second bite at the apple. I'm confused. With all due respect, they always get that. We can't order the issuance of a patent. So if we were to vacate and remand this, they are then free to enter new rejections below. It happens all the time. It's the normal order of things. We have no authority to order the issuance of a patent. I agree. So I simply ask this Court to reverse the Board decision without any mandate that they're asking for in their conclusion. Well, they automatically get that no matter what. I mean, that's the law. That's the state of the law. So going back to the merits of the argument, the overall controlling precedent is Smith International. It's precedential. It's recent, 2017. The facts are parallel. The Patent Office hasn't offered a better matching precedent. It relies only on general case law. The key takeaway in Smith International is the Patent Office gave the rationale that the examiner's broad reading of the claim word was justified because the specification neither precluded nor prohibited the overbroad interpretation. That's the rationale I'll call. Well, if it doesn't exclude, then it must include. That's the catchphrase I use. And the PTO says the word driving includes all these groundskeeping operations. My answer to the argument is that it doesn't make sense. It's not consistent with what I clearly wrote in the patent application. I don't understand. I mean, driving a lawnmower, just like somebody drives a golf cart, they can drive a lawnmower, they can drive a car, they can drive bumper cars, they can drive a go-kart. I guess I don't understand how you are imparting some sort of very, very narrow interpretation for the word driving. Well, if a person was driving a lawnmower, they would be driving it on a road. But that's not what's happening here in Angert. It doesn't say that it's driving on a roadway. Let's say, you know, I think the Patent Office makes a big deal out of it. No, but it's still driving. It's traversing a plot of land. Okay, but you're traversing a road. Driving is more narrower than traversing. This is an obviousness rejection, not anticipation. Well, right now we're just addressing whether Angert Lawnmower is meeting this single claim limitation, because that's what the Board's obviousness rejection relies upon. And they make a lot of they talk a lot about the dirt, the dirt that Angert described, and that can be a dirt road. But even a dirt road, in a rural dirt road, if you approach, if the Angert Lawnmower approaches a four-way intersection with a stop sign with two other cars there, is it going to know what to do? That's what driving means. Okay, there's rules of the road. You can't just traverse the intersection. You have to look and follow the rules and then go. That's driving, not just traversing. And Angert is simply, as common sense would dictate, it's just traversing a plot of land. There's a whole list of things what Angert does. They're all related to groundskeeping, mulching, mowing, throwing rocks. It mentions nothing about a roadway and nothing about driving. It's really the Patent Office using overbroad claim construction to make their weak prior art fit into the claim. That won't be the first time it happens. It's Smith International. It is the controlling case, Your Honor. Thank you. The case is submitted.